ETHERIDGE, FULGHUM & CO. v. L. HILLIARD & CO.

*Chattel Mortgage—Mortgagor, when Agent for Mortgagee— Agent, implied Powers of.*

Where a mortgagee of an ungathered crop authorizes and directs the mortgagor to prepare and house the crop for market, and the mortgagor, having no other means, sells part of the crop and uses the proceeds for that purpose; *Held,* that the directions to house and prepare the crop for market gave the mortgagor an implied power to sell part of the crop to get money for that purpose, and a purchaser from him was protected.

CIVIL ACTION, tried before *Graves, J.,* at Fall Term, 1887,

of PERQUIMANS Superior Court, upon the following case agreed:

" 1. On January 25th, 1886, Joshua L. Whedbee executed to the plaintiffs the mortgage hereto attached and marked " A," which was duly registered in the proper county at once.

2. Both plaintiffs and defendants were non-residents of North Carolina, and were commission merchants and cotton factors in Norfolk, Va.

3. About the beginning of the Fall of 1886, one T. Clayton Whedbee went to defendants' office in Norfolk and said to them : 'I think I can make some money buying cotton in North Carolina, if I can get it sold on reasonable terms,' and asked the defendants to name their best terms for selling. The defendants answered that they would sell for him any cotton he might ship them for $1 per bale commissions, to the best advantage, and would honor Whedbee's drafts on them to the extent of such sales. Whedbee returned home, and later in the year shipped to the defendants, for sale on his own account, over one hundred bales, which they sold for him on the terms named, placed the proceeds to his credit as sold, and honored his drafts for it, or sent to him by express, as he directed. No other relations existed between T. Clayton Whedbee and the defendants.

4. Among the cotton thus shipped to defendants by T. Clayton Whedbee were two bales which he bought of Joshua L. Whedbee, and which had been raised by the latter on the ' Crow Point' farm, described in the mortgage referred to in section one hereof, and which netted when sold _____, $____, the proceeds of which went to T. Clayton Whedbee's credit as aforesaid, and were paid upon his draft or sent to him by express.

5. The said two bales were in no way distinguished from the other cotton shipped defendants by T. Clayton Whedbee. The defendants had no knowledge of where they were

raised, nor had they any actual notice that the plaintiffs held a claim or mortgage against Joshua L. Whedbee, and no constructive notice of the same, unless the facts herein stated amount to constructive notice of the same.   T. Clayton Whedbee did have actual notice of said claim and mortgage, and knew also, that the said cotton was raised on said farm.

6. The defendants had no such notice, nor was any demand made on them for the said cotton, or its proceeds, till after they had settled in full with T. Clayton Whedbee.

7. That Joshua L. Whedbee was in possession of the "Crow Point" farm, and was authorized and directed to prepare and house the crops thereon for market; that he was insolvent and without means, and could raise money only for that purpose by selling the crops, or part of them, and the proceeds received by him from the sale of the two bales of cotton were actually used in housing the crops on said farm, which were shipped to the plaintiffs."

The mortgage referred to as marked "A," was not sent up with the transcript, but it was admitted on the argument in this Court that J. L. Whedbee, on the 25th of January, 1886, executed to the plaintiffs a certain mortgage, which was duly proved and registered, by which he " conveyed to the plaintiffs his crops of every kind to be grown by him during the year 1886, upon a certain farm in said county, known as the Crow Point farm," to secure the debt named in said mortgage.

Upon the case agreed, his Honor gave judgment for the defendants, and the plaintiffs appealed.

*Mr. T. F. Davidson* (*Mr. J. H. Blount* also filed a brief), for the plaintiffs.

No counsel for the defendants.

DAVIS, J., (after stating the facts).   Whether the sale of
cotton made by a factor, or agent, or commission 'merchant
in the State of Virginia for 'his principal in this State, who
shipped it to him for sale in the regular course of business,
such factor or commission merchant selling it, without any
notice or knowledge of any claim by another, and paying over
the proceeds to his principal without such knowledge or
notice, is such a conversion by him as will make him liable
to the actual owner for the proceeds of the cotton so sold and
paid over to his principal, it is not necessary for us to decide
in this action.

The case states that J. L. Whedbee was authorized and
directed to prepare and house the crops for market, and that
the proceeds of the cotton in question were so used by him,
and that he had no other means for that purpose.   But coun-
sel for the plaintiffs say, " the case does not state who gave
this authority or direction."   The clear and only reasonable
inference is, that, as it existed, it was given by some one who
had the *power* to give it, and this, we assume, could only
have come from the plaintiffs.

Having, then, the authority from the plaintiffs to house and
prepare the crops for market, he had the implied authority
from them to use the necessary and proper means to that end.
The proceeds of the cotton were used by him as the means,
and, as the case shows, the only means which he possessed for
that purpose.   The plaintiffs, thus by and through an agent
authorized by them, received the benefit of the proceeds of
the cotton, and to allow them to take the benefit of his act
and to repudiate so much of it as was against them, though
necessary and proper in the execution of the authority given,
would be to reverse the ordinary rules of fair dealing, and
make fraud easy and profitable.

Whedbee had the authority from the plaintiffs to house
and prepare the crops for market, and this carried with it
the implied authority to use the means necessary for that

purpose, and, in this respect, the plaintiffs were bound by his acts. *Huntley* v. *Mathias*, 90 N. C., 101, and the cases there cited.

There is no error.

No error.                                                    Affirmed.